IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-574-F

| | |
|---|---|
| FELICIA MICHELLE RICHMOND, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-14, DE-16] pursuant to Fed. R. Civ. P. 12(c). Claimant Felicia Michelle Richmond ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on June 20, 2013, alleging disability beginning November 1, 2012. (R. 23, 214-23). Both claims were denied initially and upon reconsideration. (R. 23, 92-134, 137-54). A hearing before the Administrative Law Judge ("ALJ") was held on January 6, 2015, at which Claimant was represented by counsel and

a vocational expert ("VE") appeared and testified. (R. 48-91). On May 29, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 20-47). The ALJ dismissed Claimant's application for a period of disability and DIB because Claimant's disability insured status had expired before the disability onset date, and noted that her decision addressed only Claimant's application for SSI payments. (R. 24). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 15-19), and requested an extension of time to submit new evidence, which the Appeals Council granted (R. 8-14). Claimant submitted a representative brief as part of her request for review. (R. 300-02). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on September 4, 2015. (R. 1-7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility

2

determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required

3

to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred by failing to give controlling weight to her treating psychiatrist's opinion. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-16] at 6-9.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 26). Next, the ALJ determined Claimant had the following severe impairments: type II diabetes mellitus; hypertension and hyperlipidemia; mild left ventricular hypertrophy; borderline intellectual functioning; and a mental impairment diagnosed to include bipolar affective disorder, rule out schizoaffective disorder vs. schizophrenia, paranoid type, anxiety disorder. (R. 27). The ALJ also found Claimant had nonsevere impairments of mild degenerative disc disease and mild facet arthropathy of the cervical spine. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27-28). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living, moderate difficulties in social functioning and concentration, persistence, and pace with no episodes of decompensation. (R. 28-29).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the

4

ability to perform medium work[1] with the following limitations: able to perform simple, routine tasks and can use judgment and deal with changes in a work setting consistent with such simple, routine and repetitive tasks; able to use judgment and respond to changes in a work setting consistent with such simple work-related decisions; and can have occasional interaction with coworkers and supervisors but should never work with the general public. (R. 30). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 31-32). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work. (R. 39-40).

## V. DISCUSSION

### A. The ALJ's Consideration of the Medical Opinion Evidence

Claimant contends that the ALJ erred by failing to give controlling weight to the opinion of her treating psychiatrist, Dr. Nihalani. Pl.'s Mem. [DE-15] at 6-9. Claimant argues that Dr. Nihalani's opinion is supported by the medical records, and the ALJ failed to acknowledge that Dr. Nihalani is a mental health specialist. *Id.* In response, the Commissioner maintains that substantial evidence supports the ALJ's decision to afford little weight to Dr. Nihalani's opinion. Def.'s Mem. [DE-17] at 4-7.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. § 416.967(c).

5

detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence").

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The ALJ is not required, however, to discuss all of these factors. *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished) (citing *Oldham v. Astrue*, 509 F. 3d 1254, 1258 (10th Cir. 2007); *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008) (unpublished)). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason.

6

*Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted). However, "[f]orm reports, in which a physician's only obligation is to check a box or fill in a blank, are entitled to little weight in the adjudicative process." *Whitehead v. Astrue*, No. 2:10-CV-35-BO, 2011 WL 2036694, at *9-10 (E.D.N.C. May 24, 2011) (unpublished) (determining that a check-box form completed by a treating physician was not entitled to controlling weight where it was inconsistent with the physician's own treatment notes and gave no explanation or reasons for the findings).

The medical opinion at issue here is a "Mental Impairment Questionnaire" completed by Dr. Nihalani, Claimant's treating psychiatrist, on September 4, 2013. (R. 391-95). Dr. Nihalani stated that Claimant has bipolar disorder and a Global Assessment of Functioning ("GAF") score of 50, which was her highest GAF score over the past year. *Id.* Then, Dr. Nihalani indicated, utilizing a check-box format, that Claimant has the following symptoms: poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, delusions or hallucinations, oddities of thought, perception, speech or behavior, perceptual disturbances, social withdrawal or isolation, blunt, flat, or inappropriate affect, illogical thinking or loosening of associations, decreased energy, recurrent panic attacks, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, and suicidal ideation or attempts. *Id.* Dr. Nihalani stated that Claimant was not a malingerer and gave her a limited prognosis, but indicated that Claimant could manage her own benefits. *Id.* Finally, by circling his responses, Dr. Nihalani

7

identified Claimant as having moderate restriction in activities of daily living; marked limitations in maintaining social functioning and concentration, persistence, or pace; and repeated (three or more) episodes of deterioration or decompensation in work or work-like settings. *Id.*

The ALJ discussed Dr. Nihalani's opinion as follows:

> The record demonstrates the claimant received psychiatric medication management from Dr. Nihalani beginning July 15, 2013 with no visits between September 4, 2013 and December 2, 2013. Exhibit 6F/1, 2, 7. Dr. Nihalani had treated the claimant on only two occasions following his initial evaluation prior to completing a medical source statement on September 4, 2013. Exhibit 5F, 6F/3, 4. The undersigned finds Dr. Nihalani's opinions to be unsupported by the medical evidence of record and quite conclusory in nature. Although provided an opportunity to support his opinions, the undersigned notes that Dr. Nihalani's conclusory check-box assessments fail to identify medical or clinical findings to support his opinions, relying instead on the subjectively reports [sic] signs and symptoms as reported by the claimant. Exhibit 5F/2. Dr. Nihalani appears to have relied quite heavily on the claimant's subjective report of symptoms and limitations, despite good reasons for questioning the reliability of the claimant's subjective complaints. The undersigned notes that the claimant presented to Dr. Nihalani on September 3, 2013 with reported improvement in auditory hallucinations, a happy mood and affect congruent with mood, normal appearance, cooperative behavior, no psychomotor changes, normal speech, thought process and content within normal limits, no suicidal ideation, and intact cognition. Exhibit 6F/3. One day later and on the same day her medical source statement was completed, however, the claimant reported hearing voices and not doing well. Exhibit 6F/2. The undersigned does not give controlling weight to Dr. Nihalani's opinion because it is not well-supported and is inconsistent with substantial evidence.
>
> At the second step, it must be determined how much weight the treating source's opinion is given, including whether the opinion is being rejected outright. Sufficient reasons must be given regarding the weight afforded a treating source's opinion. The undersigned affords Dr. Nihalani's opinion little weight for the following reasons.
>
> The undersigned notes that Dr. Nihalani's opinions appear to rely quite heavily upon the claimant's subjective reports of symptoms and limitations and are inconsistent with contemporaneous mental status examinations as recorded in the doctor's office visit notes. Exhibit 6F. Dr. Nihalani's medical source statement [GAF] of 50, as a present score and highest within the past year, is inconsistent with his contemporaneous treatment notes and records of Ubaid Khokhar, MD. Exhibit 3F/5, 5F/1. It is clear Dr. Nihalani was uninformed regarding prior psychiatric assessments

8

and did not have the benefit of reviewing Dr. Khokhar's records identifying a diagnosis of anxiety disorder, nos and adjustment disorder with depressed mood and anxiety, with an accompanying [GAF] of 95-100. Exhibit 3F/5.

In addition, the undersigned finds the extreme limitations identified by Dr. Nihalani to be inconsistent with his mental status examinations confirming normal appearance, cooperative behavior, no psychomotor changes or retardation, normal speech, normal thought process and content with no flight of ideas, disorganization of thought, no tangentiality or loosening of association, no thought withdrawal, insertion or broadcasting, no delusions, no auditory or visual hallucinations, no suicidal or homicidal intent or ideation, intact cognition, and fair insight and judgment. Exhibit 6F/1, 3. The undersigned is not persuaded by Dr. Nihalani's opinions as they are quite conclusory and without substantial support from objective clinical findings. For these reasons, the undersigned affords little weight to Dr. Nihalani's opinions, as they are generally inconsistent with the established residual functional capacity, objective medical evidence, and the record as a whole.

(R. 37-38).

Here, the ALJ thoroughly evaluated Dr. Nihalani's opinion and substantial evidence supports her decision to afford it little weight. The ALJ discounted Dr. Nihalani's opinion for four main reasons: (1) the limited treatment relationship between Claimant and Dr. Nihalani; (2) Dr. Nihalani appeared to rely heavily on the Claimant's subjective complaints instead of objective findings; (3) Dr. Nihalani's own treatment notes were inconsistent with and did not support his opinion; and (4) Dr. Nihalani's GAF score of 50 was inconsistent with a contemporaneous score of 95-100 from another provider. (R. 37-38). Indeed, the record demonstrates that Claimant saw Dr. Nihalani on five occasions, all in 2013: July 15, August 2, September 3, September 4, and December 2. (R. 396-404). And on September 3, 2013, the day before Dr. Nihalani authored the opinion at issue, his treatment notes indicated that Claimant's appearance and speech were normal, her behavior was cooperative, her thought process and content were within normal limits, she had no delusions, tangentiality or loosening of association, and did not have auditory or visual hallucinations—but he

noted that Claimant saw images at times. (R. 398). These treatment notes sharply contrast with the opinion rendered the next day which stated that Claimant had severe limitations, including delusions or hallucinations, illogical thinking or loosening of associations, and difficulty thinking or concentrating, suggesting that Dr. Nihalani relied on Claimant's subjective complaints while rendering the September 4, 2013 opinion as opposed to his own clinical and objective findings regarding Claimant's symptoms and limitations. (R. 391-95). Further, the ALJ correctly noted that despite the fact that Dr. Nihalani assigned a GAF score of 50 to Claimant and stated it was her highest score over the past year, another provider had assigned a GAF score of 95-100 to Claimant on September 20, 2012. (R. 38 (citing R. 335)). Where a treating physician's opinion is inconsistent with his own treatment notes and other evidence of record, as is the case here, the ALJ may give the opinion limited weight. *See Dunn v. Colvin*, 607 F. App'x 264, 269 (4th Cir. 2015) (unpublished) (citing *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014)); *Mery v. Colvin*, No. 7:15-CV-104-FL, 2016 WL 4540815, at *8 (E.D.N.C. Aug. 30, 2016) (unpublished) (finding no error in the ALJ's assignment of little weight to portions of treating physician's opinion that were inconsistent with the physician's treatment records). "An ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998)." *Dunn*, 607 F. App'x at 267.

In support of her argument, Claimant notes that the ALJ failed to discuss the fact that Dr. Nihalani is a mental health specialist, and points to her medical records from Right Path Behavior Health Services and the Carter Clinic, which include GAF scores of 31 and 40, to show that Dr.

10

Nihalani's opinion is supported by the record evidence. Pl.'s Mem. [DE-15] at 6-9. This argument is without merit, however, where the ALJ in fact discussed this evidence. The ALJ noted that Claimant "has not consistently treated with Dr. Nihalani or any other psychiatrist, and records fail to demonstrate the claimant participated in psychotherapy as was established in her treatment plan." (R. 34). The ALJ also commented on the lack of mental health records, which consist of notes from the five visits with Dr. Nihalani, an intake assessment at Right Path Behavioral Health Services, and an assessment at the Carter Clinic, emphasizing that the assessments consisted primarily of Claimant's subjective complaints. (R. 34-35, 38). Further, the ALJ explained why she did not find the GAF scores of 31 and 40 to be accurate measures of Claimant's condition: "[a] lower assessment of 40 was identified in the context of initial evaluation for services including report and discussion of the claimant's psychological history, and a score of 31 was identified in the context of significant environmental and housing stressors, including homelessness and denial of cash assistance." (R. 39). However, the ALJ found "the assessments of GAF scores of 52 to be consistent over time and consistent with the objective details and chronology of the record[,]" and Claimant does not challenge this conclusion. *Id.* It is insufficient for the Claimant to point to other record evidence and argue that the ALJ's decision is unfounded, *Frazier v. Astrue*, No. 4:06-CV-254-FL, 2008 WL 138050, at *14 (E.D.N.C. Jan. 10, 2008) (unpublished), as this invites the court to re-weigh the evidence and substitute its own conclusions for those of the Commissioner, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). While some evidence in the record might support Dr. Nihalani's opinion, there is more than a "scintilla of evidence" supporting the ALJ's decision to afford little weight to the opinion. *See Dunn*, 607 F. App'x at 271 (concluding the ALJ did not err in affording limited weight to a treating source's opinion where "there is more than a 'scintilla of evidence' in

11

the record supporting the ALJ's conclusion that [the physician's] opinion is incongruent with both his own treatment notes and some of the other medical evidence in the record."). And although the ALJ did not specifically discuss the fact that Dr. Nihalani is a mental health specialist, the ALJ is not required to specifically comment on each factor listed in the regulations. *See Ware*, 2012 WL 6645000, at \*2. Thus, where the ALJ properly considered the consistency and supportability of Dr. Nihalani's opinion, *Johnson*, 434 F.3d at 654, substantial evidence supports her decision to afford the opinion little weight.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-14] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-16] be ALLOWED and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **Wednesday, February 1, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation**

by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 18th day of January, 2017.

Robert B. Jones, Jr.
United States Magistrate Judge